UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CARLOS RAMIREZ and | § | SA-12-CV-305-DAE |
| ERIC ORTIZ LEIJA, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| DIMMIT COUNTY, TEXAS; | § | |
| ROBERT G. MENDOZA and | § | |
| FLORINDA PEREZ, in their individual | § | |
| and official capacities, | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

ORDER: (1) GRANTING DEFENDANT'S MOTION TO DISMISS; (2)
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On June 11, 2014, the Court heard oral argument on the Motion to

Dismiss (Dkt. #22) filed by Defendant Dimmit County and the Motion for

Summary Judgment (Dkt. # 23) filed by Defendants Dimmit County, Robert G.

Mendoza, and Florinda Perez (collectively, "Defendants").  Vincent Lazaro, Esq.

represented Plaintiffs Carlos Ramirez and Eric Ortiz Leija (collectively,

"Plaintiffs") at the hearing; Charles Straith Frigerio, Esq., represented Defendants.

Upon careful consideration of the supporting and opposing memoranda, as well as

the arguments presented at the hearing, the Court **GRANTS** both Motions.

BACKGROUND

Plaintiffs are police officers with the Crystal City Police Department. ("FAC," Dkt. # 14 at 3.)  On or about February 8, 2009, Plaintiffs and other individuals attended a paintball game in Dimmit County at Presidio Park.  (Id. at 5.)  The paintball game resulted in damage to picnic tables and park vegetation. (Dkt. # 29, Ex. P-10.)  A camera located in the park photographed the participants; upon its discovery, the camera was shot by a paintball and damaged.  (Id. at 4.) Plaintiffs were subsequently questioned by the Dimmit County Sheriff's Office and the Texas Rangers as part of an investigation into the vandalism of the park. (Id. at 6.)  After the investigation, a warrant was issued for Plaintiffs' arrest for the crime of criminal mischief and vandalism.  (Id. at 3.)  According to their Amended Complaint, both Plaintiffs denied having any involvement in damaging the surveillance camera.[1]  (Id. at 6.)  Also according to Plaintiffs, despite being informed that a man named Mark Guevera was believed to be the one who shot at the camera, Defendant Mendoza of the Dimmit County Sheriff's Office failed to follow up on the lead.  (Id. at 6–7.)  Plaintiffs allege:

> In the end, despite the fact that they vehemently denied any
> involvement in the destruction of Dimmit County property; despite
> the fact that no evidence—photographs, witness statements, etc.—
> supported the basis for any probable cause; despite the fact that the
> individual Defendants failed to fully investigate the manner an follow

---

[1] However, the reports indicate, and Plaintiffs do not deny, that they participated in the paintball fight.  (See Dkt. # 29, Ex., P-14, P-15.)

2

up on questioning individuals specifically named as the likely
perpetrator; despite the fact that most of the approximately twenty
(20) people who participated in the paint-ball battle were never
questioned, Plaintiffs—police officers with the Crystal City Police
Department—were unceremoniously arrested by Defendant Dimmit
County.

(Id. at 8.)  Ultimately, Plaintiffs were exonerated of the crime of criminal mischief.
(Id.)

On June 20, 2012, Plaintiff Ramirez filed a complaint asserting
actions under 42 U.S.C. § 1983 and various state law tort claims against Defendant
Dimmit County and Officers Robert Mendoza and Florinda Perez, in their official
and individual capacities.  (Dkt. # 5.)  The tort claims include intentional infliction
of emotional distress, false imprisonment, malicious prosecution, and defamation.
Plaintiffs have also asserted a negligent hiring claim against Dimmit County.  On
November 14, 2012, Plaintiff Ramirez filed an Amended Complaint (Dkt. # 14),
adding Eric Leija as a Plaintiff.

On September 13, 2013, Dimmit County filed a Motion to Dismiss
(Dkt. # 22.), to which Plaintiffs did not respond.  On September 23, 2013,
Defendants filed a Motion for Summary Judgment.  (Dkt. # 23.)  On October 17,
2013, Plaintiffs filed Response to Defendants' Motion for Summary Judgment.
(Dkt. # 28.)  Defendants' filed a Reply on October 22, 2013.  (Dkt. # 30.)

<u>DISCUSSION</u>

I.   <u>Defendant Dimmit County's Motion to Dismiss</u>

　　　　First, Dimmit County seeks to dismiss Plaintiffs' claims against
Defendants Mendoza and Perez (collectively, the "Officers") pursuant to the Texas
Tort Claims Act.  Specifically, Dimmit County argues that the Texas Tort Claims
Act and the Election of Remedies provision, § 101.106(e), mandates dismissal of
Plaintiffs' claims asserted against the Officers.  (Dkt. # 22 at 2.)

　　　　A.   <u>Texas Tort Claims Act</u>

　　　　Generally, governmental entities are immune from tort liability
"unless the legislature has waived immunity."  <u>Dall. Cnty. Mental Health & Mental</u>
<u>Retardation v. Bossley</u>, 968 S.W.2d 339, 341 (Tex. 1998).  The Texas Tort Claims
Act provides such a "limited waiver of immunity for certain suits against
governmental entities."  <u>Mission Consol. Indep. Sch. Dist. v. Garcia</u>, 253 S.W.3d
653, 655 (Tex. 2008).  The Act waives immunity to the extent that the
governmental unit is responsible for damages arising from the "use of a motor-
driven vehicle" or from a "condition or use of personal or real property."  <u>See</u> Tex.
Civ. Prac. & Rem. Code § 101.021.   Furthermore, the Act explicitly provides that
a waiver of immunity does not extend to intentional torts including claims "arising
out of assault, battery, [or] false imprisonment."  <u>Id.</u> § 101.057.

　　　　Before the Act was originally enacted, plaintiffs often tried to

4

circumvent government immunity rules by suing employees in their individual capacities.  See Franka v. Velasquez, 332 S.W.3d 367, 383 (Tex. 2011).  However, in an effort to reform the tort system, the election-of-remedies provision was created by the Legislature to prevent such circumvention.  See Garcia, 253 S.W.3d at 655; see also Tex. Civ. Prac. & Rem. Code § 101.106.

B.    Election of Remedies Provision

The election-of-remedies provision forces plaintiffs at the start of litigation to decide to sue either the individual employee because he allegedly acted independently, or the governmental unit because it is vicariously liable for employees acting within the scope of their employment.  See Garcia, 253 S.W.3d at 657.  By requiring the plaintiff to make an irrevocable election to either sue the government or the employee individually, the Act "narrows the issues for trial and reduces delay and duplicative litigation costs."  Id.  The Texas Supreme Court noted that the Tort Claim Act's election scheme "is intended to protect governmental employees by favoring their early dismissal when a claim regarding the same subject matter is also made against the governmental employer."  Id.

Under the election of remedies provision, a plaintiff is barred from recovering from an individual and is therefore limited to recovering from a governmental unit in the following three instances: (1) when a suit is filed against the governmental unit only; (2) when a suit is filed against both the governmental

5

unit and its employee; and (3) when a suit is filed against an employee whose conduct was within the scope of his or her employment and the suit could have been brought against the governmental unit.  See Garcia, 253 S.W.3d at 657; Tex. Civ. Prac. & Rem. Code § 101.106 (a), (e), (f).

Here, Plaintiffs have made the second election by suing Dimmit County and the individual officers.  Thus, subsection (e) applies:

> (e) If a suit is filed under this chapter against both a governmental entity and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

Tex. Civ. Prac. & Rem. Code § 101.106(e).  A plaintiff, therefore, "may elect to sue both the government and its employee, but the statute grants the government the unconditional right to have its employee dismissed from the suit if the plaintiff makes that election."  Franka, 332 S.W.3d at 388.

All that is required for dismissal of the individual employee Defendants is for the governmental unit to file a motion in accordance with § 101.106(e).  See, e.g., Garcia, 253 S.W.3d at 659 (dismissing government employee upon school district's filing of a motion); City of Hous. v. Uribe Mendoza, No. 14–11–00647–CV, 2011 WL 6809864, at *1 (Tex. App. Dec. 22, 2011) ("Once the governmental unit files a motion to dismiss the claims against its employees under section 101.106(e), the trial court must grant the motion and dismiss the claims against the employee from the suit."); Waxahachie Indep. Sch.

Dist. v. Johnson, 181 S.W.3d 781, 785 (Tex. App. 2005) (same).

Based on the foregoing reasoning, because Plaintiffs have brought state-law claims against both the Officers and Dimmit County, the Court grants the Dimmit County's Motion to Dismiss all state law claims against the Officers pursuant to § 101.106(e).

II.   Motion for Summary Judgment

Next, Defendants (including Dimmit County, Mendoza, and Perez) move for summary judgment.  (Dkt. # 23.)  Because the Court has concluded that all state law claims against the Officers must be dismissed from this case, the remaining claims are (1) the state law tort claims against Dimmit County, (2) the negligent hiring claim against Dimmit County, (3) the § 1983 claims against Dimmit County, and (4) the § 1983 claims against the Officers.

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986).  The main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Id. at 323.  If the moving party

7

meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial. ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012). In deciding whether a fact issue exists, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

Defendants assert they are entitled to summary judgment on all claims because (1) Plaintiffs' state law tort claims against Dimmit County are barred because they are intentional torts for which sovereign immunity has not been waived (Dkt. # 23 at 10); (2) there is no evidence that a custom or policy of Dimmit County directly led to Plaintiffs' alleged constitutional deprivation and, thus, it is entitled to summary judgment as a matter of law on Plaintiffs' § 1983 claims (id. at 9); and (3) Plaintiffs cannot demonstrate that they were deprived of a

right secured by the Constitution and, thus, the Officers are entitled to summary

judgment as a matter of law on Plaintiffs' § 1983 claims (id. at 6.)

    A.    <u>State Law Tort Claims Against Dimmit County</u>

        In its Motion for Summary Judgment, Dimmit County asserts that

Plaintiffs' state law tort claims are barred because they are intentional torts for

which sovereign immunity has not been waived.  (Dkt. # 23 at 9.)  Specifically,

Dimmit County contends that the Texas Tort Claims Act ("TTCA") mandates

dismissal of the state law tort claims brought against Dimmit County.

        Under the TTCA, a municipality is not liable for claims "arising out

of assault, battery, false imprisonment, or any other intentional tort . . . ."  Tex.

Civ. Prac. & Rem Code § 101.057(1); <u>Rivera v. City of San Antonio</u>, No. SA-06-

CA-235-XR, 2006 WL 3340908, at *15 (W.D. Tex. Nov. 15, 2006).

        In <u>Bustos v. Martini Club, Inc.</u>, the Fifth Circuit affirmed the district

court's dismissal of a plaintiff's intentional tort claims[2] because the TTCA does

not waive liability for those claims.  <u>Bustos</u>, 599 F.3d at 467–68.  Likewise, the

TTCA does not waive liability for Plaintiffs' intentional tort claims against Dimmit

County for intentional infliction of emotional distress, false imprisonment,

malicious prosecution, and slander/defamation.  Accordingly, the Court dismisses

---

[2] The plaintiff in <u>Bustos</u> asserted state law claims for assault, battery, false
imprisonment, intentional infliction of emotional distress, invasion of privacy,
negligent hiring, negligence, and retaliation.  <u>Bustos</u>, 599 F.3d at 461.

those claims against Dimmit County.

However, "both the United States Supreme Court and the Texas Supreme Court have drawn a distinction between claims for negligent employment . . . and the intentional acts of an employee."   Medrano v. City of Pearsall, 989 S.W.2d 141, 144 (Tex. App. 1999).   Thus, Plaintiffs' claim of negligent training and supervision against Dimmit County may survive because, unlike intentional torts, waiver of immunity does not extend to that claim.  Id. ("Although a governmental unit is immune from claims arising out of intentional torts, where the focus of a party's claim is on the governmental unit's negligent conduct, not the intentional conduct of its employee, the claim will not be said to arise out of the intentional tort.")

While a plaintiff may not circumvent the intentional tort exception of the TTCA by merely alleging the government was negligent in supervising the employee-tortfeasor, a plaintiff may bring an action for negligent hiring, training or supervision against a City.  Delaney v. Univ. of Hous., 835 S.W.2d 56, 59–61 (Tex. 1992).  However, a claim for negligent hiring, training or supervision must still arise under one of the three specific areas of liability for which immunity is waived.  Medrano, 989 S.W.2d at 144.

 The TTCA creates a limited waiver of sovereign immunity for claims arising under one of three specific areas of liability: (1) injury caused by an

employee's use of a motor-driven vehicle; (2) injury caused by a condition or use of tangible personal or real property; and (3) claims arising from premises defects. Tex. Civ. Prac. & Rem. Code § 101.021.

Here, Plaintiffs' claim for negligent hiring arises out of the alleged unlawful arrest and unlawful detainment; it does not fall within one of the three specific areas of liability for which immunity has been waived.  Accordingly, Dimmit County is immune from Plaintiff's negligent hiring claim and Plaintiffs' claim asserting such is dismissed.

B.    Section 1983 Claims

Section 1983 creates a private right of action for redressing violations of federal law by those acting under color of state law.  It provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived them of a right secured by the Constitution or laws of the United States.  See id.; Daniels v. Williams, 474 U.S. 327, 330 (1986).   Here, Plaintiffs claim that Dimmit County and the Officers violated their Fourth Amendment rights by arresting without probable cause

(unlawful arrest) and unlawfully detaining (unlawful seizure) Plaintiffs in violation

of the Fourth Amendment.  (FAC at 10.)

> 1.    Plaintiffs' § 1983 claims against Dimmit County fail as a matter
> of law.

Defendants first argue that there is no evidence that a custom or policy

of Dimmit County directly led to Plaintiffs' alleged constitutional deprivation and,

thus, it is entitled to summary judgment as a matter of law on Plaintiffs' § 1983

claims.  (Dkt. # 23 at 9.)

A municipality is a "person" subject to suit under § 1983.  See Monell

v. Dept. of Social Servs., 436 U.S. 658 (1978).   However, municipalities may not

be held responsible for the acts of their employees under a respondeat superior

theory of liability.  Id.; see also Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th

Cir. 2001).   Thus, in order to succeed on a § 1983 claim against a municipality, a

plaintiff must demonstrate that the municipality itself—not merely its employees—

has violated the Constitution.  Piotrowski, 237 F.3d at 578 ("[T]he unconstitutional

conduct must be directly attributable to the municipality through some sort of

official action or imprimatur; isolated unconstitutional actions by municipal

employees will almost never trigger liability.").

"Municipal liability for section 1983 violations results if a

deprivation of constitutional rights was inflicted pursuant to official custom or

policy."[3]  Id. at 579.  As the Court described in Monell:

> We conclude, therefore, that a local government may not be sued
> under § 1983 for an injury inflicted solely by its employees or agents.
> Instead, it is when execution of a government's policy or custom,
> whether made by its lawmakers or by those whose edicts or acts may
> fairly be said to represent official policy, inflicts the injury that the
> government as an entity is responsible under § 1983.

436 U.S. at 694–95 (emphasis added).

Thus, in order to prevail on a § 1983 municipality-liability claim, a

plaintiff must prove three elements: (1) a policymaker, (2) an official policy, and

(3) a violation of constitutional rights whose "moving force" is the policy or

custom.  Piotrowski, 237 F.3d at 578.

Dimmit County asserts that it is entitled to summary judgment

because Plaintiffs have not set forth any evidence to establish the second or third

element of municipality-liability—that a custom or policy of Dimmit County

directly led to Plaintiffs' alleged constitutional deprivation.  (Dkt. # 23 at 9.)

A county's official policy may be established in several ways.  An

---

[3]  Plaintiffs cite to Doe v. Taylor Independent School District, 15 F.3d 443 (5th Cir.
1994) for the proposition that a municipality may be liable if a supervisory official,
by action or inaction, demonstrates a deliberate indifference the constitutionally
protected rights of citizens.  Id. at 454.  However, Doe dealt with an individual
supervisor's liability rather than a municipality's liability.  Id. at 453 ("The most
important difference between City of Canton and this case is that the former dealt
with a municipality's liability whereas the latter deals with an individual
supervisor's liability.").  Doe involved alleged failures of supervisors to prevent
substantive due process violations, for which the plaintiff had asserted claims
against the school officials in their supervisory capacity.  Here, Plaintiffs have not
asserted claims of supervisory failure.

"official policy" may arise either directly from an authorized policymaker's official adoption of a "statement, ordinance, regulation, or decision," or indirectly from a "persistent, widespread practice of non-policymaking municipal employees that is so common and well settled as to constitute a custom." Bennett v. Slidell, 735 F.2d 861, 862 (5th Cir. 1984); Montes v. Cnty. of El Paso, Tex., No. 3:09-CV-82-KC, 2009 WL 2369621, at *10 (W.D. Tex. July 29, 2009). "Finally, liability may also attach in rare circumstances when it stems from a single decision by the municipal policymaker not to train an individual officer 'even where there has been no pattern of previous constitutional violations.'" Montes, 2009 WL 2369621 at *10 (citing Brown v. Bryan Cnty., Ok., 219 F.3d 250, 457 (5th Cir. 2000)).

Here, Plaintiffs have not pointed to a statement, ordinance, regulation, or decision from an authorized policymaker, nor have Plaintiffs alleged a claim under § 1983 for failure to train; rather, Plaintiffs seek to demonstrate an "official policy" through custom. Such policy may be evidenced by custom, that is:

> [A] persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy . . . . Actions of officers and employees of a municipality do not render the municipality liable under section 1983 unless they execute official policy as above defined.

Piotrowski, 237 F.3d at 579 (citing Webster v. City of Hous., 735 F.2d 838, 841 (5th Cir. 1984)).

14

Plaintiffs argue that the newly-elected Dimmit County Sheriff had a custom of "overlook[ing] constitutional niceties in order to promote the Dimmit County Sheriff's Office" by "mak[ing] an example" out of Plaintiffs, who were police officers in a neighboring county.  (Dkt. # 28 at 13.)  In support, Plaintiffs cite to the declarations of themselves as evidence of an "unwritten custom or policy" which resulted in their unlawful arrest and false imprisonment.  Plaintiff Ramirez states:

> It is upon my information and belief that Joel Gonzalez, the then-newly elected Sheriff of Dimmit County specifically tried to make an example of me and the other two Crystal City Police Officers in a political effort to promote himself and the Dimmit County Sheriff's Office.  The fact remains that the investigators employed by the Dimmit County Sheriff's Office made a deliberate choice to conveniently overlook critical facts and information that easily would have exonerated me prior to my arrest.

(Resp. at 12; Dkt. # 29, Ex. P-14.)  Next, Plaintiff Leija states:

> It is upon my information and belief that Joel Gonzalez, the then-newly elected Sheriff of Dimmit County specifically tried to make an example of me and the other two Crystal City Police Officers in a political effort to promote himself and the Dimmit County Sheriff's Office.  When I was questioned prior to my arrest, Deputy Sheriff Arturo [LNU] specifically told me: "There is a new Sheriff in town and we ain't going to take no shit."  The fact remains that the investigators employed by the Dimmit County Sheriff's Office made a deliberate choice to conveniently overlook critical facts and information that easily would have exonerated me prior to my arrest.

(Resp. at 12; Dkt. # 9, Ex. P-15.)

Based upon these affidavits, the "custom" Plaintiffs assert that was

promulgated by Dimmit County was the Sheriff's policy of promoting himself by

"making an example" of Crystal City Police Officers, which they allege was the

moving force hind their constitutional deprivations.  Essentially, Plaintiffs argue

that because they were the only ones who were arrested out of the twenty people

playing paintball, this face alone is circumstantial evidence of a custom or policy

of the newly-elected Sherriff to promote himself by making an example of

Plaintiffs in disregard of their constitutional rights.

       However, these assertions are insufficient to demonstrate a practice

that is "so common and well-settled as to constitute a custom" that it fairly

represents a policy sufficient to hold Dimmit County liable.  Plaintiffs' own

declarations, by themselves, do not demonstrate a "common and well-settled

policy" of the Dimmit County Sheriff's Office that would lead Dimmit County to

the obvious consequence that Plaintiff's unlawful arrest and detainment would

result.  For example, Plaintiffs have not alleged a pattern of conduct by the newly-

elected sheriff to make an example out of police officers of other counties.

Plaintiffs must demonstrate a "persistent, widespread practice of City officials or

employees, which . . .  is so common and well-settled as to constitute a custom that

fairly represents municipal policy."  <u>Piotrowski</u>, 237 F.3d at 579.  Their

declarations, alone, do not establish such.

       Additionally, although Plaintiffs argue that this policy is evident

because only three Crystal City Police Officers were arrested out of the twenty

persons involved, Plaintiffs' declarations suggest there were additional participants

who were <u>not</u> arrested and were also Crystal City Police Officers.  In his

declaration, Leija states:

> On or about February 9, 2009, I participated in a paint-ball battle that
> took place near Presidio Park in Dimmit County, Texas.  By the time I
> arrived at the location where the battle was going to take place, there
> were already at least 20 other people there.  When I arrived, I saw
> <u>several other officers from the Crystal City Police Department</u>
> <u>including Carlos Ramirez and Domingo Flores.</u>

(Dkt. # 29, Ex. P-13 (emphasis added).)  Ramirez's declaration reflects the same:

"My girlfriend at the time, Marie Serrano, dropped me off and when I arrived, <u>I</u>

<u>saw several other officers from the Crystal City Police Department including Eric</u>

<u>Leija and Domingo Flores.</u>"  (<u>Id.</u>, Ex. P-14 (emphasis added).)  This indicates that

there were several other Crystal City officers present who were not arrested.  If it

were indeed a custom or policy of the Dimmit County Sheriff's Office to make an

example out of any police officers in disregard of their constitutional rights, why,

then, were the "several" other officers of the Crystal City Police Department

present at the paintball fight not arrested?

  Moreover, Plaintiffs have not demonstrated a violation of their rights

to be free from unlawful arrest and detainment.  Plaintiffs admit in their own

declarations that they both participated in the paintball battle in Presidio Park

February 9, 2009.  (<u>See</u> Dkt. # 29, Exs. P-13, P-14.)  They also attach the February

17

10, 2009 Dimmit County Sheriff's Office Supplemental Report detailing the investigation into the vandalism (id., Ex. P-7), which states that Plaintiff Ramirez admitted to an investigator that he participated in the paintball fight with pink paintballs and provided a few names of the persons at the park that day, including Plaintiff Leija.

Plaintiffs appear to rest on the fact that they did not damage a digital camera and, thus, were innocent of the criminal mischief that occurred.  For example, Ramirez states in his declaration: "At some time during the day, a surveillance camera belonging to Dimmit County was vandalized.  I had nothing to do with this vandalism and neither did Eric Leija nor Domingo Flores."  (Id.)  However, the information charging Ramirez with the offense of criminal mischief states that he "intentionally or knowingly damage[d] or destroy[ed] tangible property, to wit; Surveillance camera, defacing picnic tables, and park vegetation by using a paintball gun …."  (Id., P-10).  Thus, the offense of criminal mischief was not based solely on the destruction of the camera, but also on the destruction of additional property in the park; Plaintiffs do not deny their involvement in the paintball fight which resulted in the damage.

In sum, there is no evidence to indicate that Plaintiffs were deprived of their constitutional rights under the Fourth Amendment to be free from unlawful arrest and detainment; they certainly have provided no evidence outside of their

own unsupported declarations that a custom or policy of Dimmit County directly led to Plaintiffs' alleged constitutional deprivation.  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment on Plaintiffs' § 1983 claims against Dimmit County.

       2.    <u>Plaintiffs' § 1983 claims against the Officers fail as a matter of law.</u>

Defendants also assert that Plaintiffs cannot demonstrate they were deprived of a right secured by the Constitution and, thus, Plaintiffs' § 1983 claims against the Officers must be dismissed.  (Dkt. # 23 at 6.)  Specifically, Defendants assert that Plaintiffs were arrested based on an arrest warrant that was issued by a Magistrate judge and were criminally prosecuted under an information signed by the county attorney; thus, Plaintiffs cannot demonstrate lack of probable cause for their arrest.  (<u>Id.</u>)  Again, the Court agrees.

To overcome the qualified immunity retained by government officials, a plaintiff must show: (1) a constitutional violation; (2) of a right clearly established at the time the violation occurred; and (3) that the defendant actually engaged in conduct that violated the clearly established right.  <u>Brown v. Lyford</u>, 243 F.3d 185, 189 (5th Cir. 2001).

To prove the first element—a constitutional violation—a plaintiff must demonstrate a lack a probable cause to support both of their claims for unlawful arrest and false imprisonment.  <u>Haggerty v. Tex. S. Univ.</u>, 391 F.3d 653,

655 (5th Cir. 2004) ("To ultimately prevail on his section 1983 false arrest/false imprisonment claim, [plaintiff] must show that [the officer] did not have probable cause to arrest him."). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Id. (citing Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001)).

Here, Plaintiffs were arrested pursuant to a valid arrest warrant, signed by a magistrate judge, after Plaintiff Ramirez admitted to participating in the paintball fight with Plaintiff Leija. There was more than sufficient probable cause that Plaintiffs committed the offense of criminal mischief; thus, their constitutional rights were not violated. Plaintiffs' § 1983 claims against the Officers are dismissed.

III.   Statute of Limitations

Defendants alternatively argue that the statute of limitations bars Plaintiffs' claims. (Dkt. # 22 at 5.) Although the Court has granted summary judgment for Defendants on all of Plaintiffs' claims, for the purpose of thoroughness, the Court will analyze Defendants' arguments regarding the statute of limitations.

A.   Section 1983

20

"The limitations period for a claim brought under Section 1983 is determined by the general statute of limitations governing personal injuries in the forum state." Humphreys v. City of Ganado, Tex., 467 F. App'x 252, 255 (5th Cir. 2012) (citing Price v. City of San Antonio, 431 F.3d 890, 892 (5th Cir. 2005)). Therefore, Texas law governs the relevant limitations period.  Pursuant to Texas Civil Practice and Remedies Code § 16.003, Plaintiffs' § 1983 claims are governed by a two-year statute of limitations.  Tex. Civ. Prac. & Rem. Code § 16.003 (a person must bring suit for . . . personal injury . . . not later than two years after the date a cause of action accrues); see Curlin v. Maples, No. 302CV1997H, 2003 WL 22946483, at *3 (N.D. Tex., Feb. 12, 2003) (concluding that the plaintiffs' claims for false arrest and false imprisonment are subject to a two-year statute of limitations).

Although Texas law determines the statute of limitations, federal law determines when a cause of action under § 1983 accrues.  Gartrell v. Gaylor, 981 F.2d 254, 257 (5th Cir. 1993).  A § 1983 plaintiff's awareness of his injury, which triggers the limitations period, encompasses two elements: (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions.  Piotrowski, 237 F.3d at 576.  "Ordinarily, a cause of action under [S]ection 1983 accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'"  Humphreys, 467 F. App'x at 255

(quoting Price, 431 F.2d at 893); see also Gartrell, 981 F.2d at 257 ("The statute of limitations therefore begins to run when the plaintiff is in possession of the 'critical facts that he has been hurt and who has inflicted the injury . . . ." (citing Lavellee v. Listi, 611 F.2d 1129, 1130 (5th Cir. 1980))).

Here, Plaintiffs were arrested on February 11, 2009. Therefore, Plaintiffs became aware of the injuries upon which their § 1983 claims for unlawful arrest and unlawful detention are based on February 11, 2009, as the "critical facts that [Plaintiffs] [were] hurt and who has inflicted the injury" were apparent to them on that day. See Curlin, 2003 WL 22946483, at *3 ("Plaintiffs' claim for false arrest accrued at the time of the arrest . . . ."). Accordingly, Plaintiffs' § 1983 claims accrued on February 11, 2009, and therefore, the two-year statutory limitations period expired on February 11, 2011, two years later.

Plaintiffs argue that their § 1983 claims did not accrue until the charges against them were dismissed. (Resp. at 2, 5.) However, Plaintiffs are incorrect; at the latest, Plaintiffs' § 1983 claims predicated on their alleged unlawful detainment accrued at the time of their release from custody. See Curlin, 2003 WL 22946483, at *3 ("However, false imprisonment is a 'continuing tort' for which a cause of action accrues when detention ends.").

Although the Supreme Court has held that a "§ 1983 cause of action or damages attributable to an unconstitutional conviction or sentence does not

accrue until the conviction or sentence is invalidated," <u>Heck v. Humphrey</u>, 512

U.S. 477, 486–87 (1994), "the <u>Heck</u> rule for deferred accrual is called into play

only when there exists 'a conviction or sentence that has <u>not</u> been . . . invalidated,'

that is to say, an 'outstanding criminal judgment,'" <u>Wallace v. Kato</u>, 549 U.S. 384,

393 (2007).  This is not the case here, as Leija was acquitted by a jury and the

charges against Ramirez were dismissed.  (<u>See</u> Resp. at 2.)

   Plaintiffs do no state when they were released from detention

following their arrest; however, they were surely not held on charges of criminal

mischief, a class A misdemeanor (<u>see</u> Dkt. # 29, Ex. P-10), past the date of April 3,

2010, which is two years prior to the filing of their complaint in the Western

District of Texas.[4]  Accordingly, their § 1983 claims are barred by the statute of

limitations.

  B. <u>State-Law Tort Claims</u>

   As to Plaintiffs' state-law tort claims, they too are subject to a two-

year statute of limitations with the exception of malicious prosecution, which has a

statute of limitations of one year.  <u>See</u> Tex. Civ. Prac. & Rem. Code §§ 16.002,

16.003.  However, because Plaintiffs' state law tort claims are barred against the

---

[4] Defendants argue that Plaintiffs' complaint was not filed until June 20, 2012.
(Dkt # 23 at 5.)  However, although their complaint was not docketed until June
20, 2012, (see Dkt. # 6), Plaintiffs filed their Application to Proceed Without
Prepayment of Fees on April 3, 2012, attaching a copy of their proposed
complaint.  Accordingly, the Court determines that April 3, 2012 serves as the date
Plaintiffs filed their complaint.

Officers pursuant to § 101.106(e), and are barred against Dimmit County by the TTCA, the Court will not address whether the intentional tort claims are barred by statute of limitations.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Dimmit County's Motion to Dismiss Officers Robert Mendoza and Florinda Perez pursuant to Texas Civil Practices and Remedies Code § 101.106(e) (Dkt. # 22), and **GRANTS** Defendants' Motion for Summary Judgment (Dkt. # 23).  Plaintiffs' claims are dismissed.

IT IS SO ORDERED

DATED:  San Antonio, Texas, June 19, 2014.

_____

David Alan Ezra
Senior United States District Judge